FILED
TARRANT COUNTY
6/29/2021 4:59 PM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. 017-326236-21

| | | |
|---|---|---|
| **DD ENERGETICS INC., f/k/a** | § | |
| **DIAMONDBACK INDUSTRIES, INC.,** | § | **IN THE DISTRICT COURT OF** |
| **and DERREK DRURY** | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | **TARRANT COUNTY, TEXAS** |
| | § | |
| **TRAVELERS CASUALTY AND** | § | |
| **SURETY COMPANY OF AMERICA,** | § | |
| | § | |
| *Defendant*. | § | **_____ JUDICIAL DISTRICT** |

## PLAINTIFFS' ORIGINAL PETITION

Plaintiffs DD Energetics Inc., f/k/a Diamondback Industries, Inc., ("Diamondback") and Derrek Drury ("Drury") (together, "Plaintiffs") hereby file this their *Original Petition* against Defendant Travelers Casualty and Surety Company of America ("Travelers" or "Defendant"). In support, Plaintiffs respectfully show the Court as follows:

## I.
## DISCOVERY CONTROL PLAN

1.   Plaintiffs will conduct discovery under Level 3 of the Texas Rules of Civil Procedure.

## II.
## PARTIES

2.   Plaintiff DD Energetics Inc., f/k/a Diamondback Industries, Inc., is a corporation formed in the State of Texas and maintains its principal place of business in Tarrant County, Texas.

3.   Plaintiff Derrek Drury is an individual citizen of the State of Texas and resides in Tarrant County, Texas.

4. Defendant is an insurance company registered with the Texas Department of Insurance. Defendant may be served with process through its designated agent for service, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

### III.
### JURISDICTION & VENUE

5. This Court has jurisdiction over this matter because the amount in controversy exceeds the jurisdictional limits of this Court. Pursuant to Texas Rule of Civil Procedure 47, Plaintiffs seek monetary relief that exceeds $1,000,000.

6. Venue is proper in Tarrant County, Texas because all or a substantial part of the events and omissions giving rise to this lawsuit occurred in Tarrant County, Texas. Tex. Civ. Prac. & Rem. Code § 15.002. Venue is also proper in Tarrant County because Plaintiff Drury resided in Tarrant County at the time the causes of action asserted herein arose, and because Plaintiff Diamondback maintained its principal office in Tarrant County at such time. Tex. Civ. Prac. & Rem. Code § 15.032.

7. This Court has personal jurisdiction over Defendant pursuant to Texas's long-arm statute because Defendant is registered with the Texas Department of Insurance, routinely conducts business in Texas, maintains a registered agent in this State, and in this instance, entered into a written contract with Plaintiffs that is performable in whole or in part in Texas. Tex. Civ. Prac. & Rem. Code § 17.042. Moreover, as set forth herein, Plaintiffs' claims against Defendant arise from Defendant's contacts within the State of Texas. Further, Defendant's contacts with the State of Texas are expansive and more than sufficient to give rise to general jurisdiction. Additionally, the exercise of personal jurisdiction over Defendant does not offend traditional notions of fair play and substantial justice.

# IV.
# INTRODUCTION

8. This is a breach of contract action. In exchange for receiving substantial policy premiums, Travelers agreed to provide insurance coverage in the event certain claims were made against Diamondback and Drury, both named as an insured under the policy issued by Travelers. The insurance contract required Travelers to defend and to indemnify Diamondback and Drury. A claim was asserted against Diamondback and Drury and prompt notice of the claim was provided to Travelers. Travelers refused to assume the defense of the claim and defense costs were incurred by Diamondback and Drury. Travelers wrongfully denied the claim and breached the insurance contract. This lawsuit is brought to recover the damages caused by Travelers' breach of the contract.

# V.
# RELEVANT FACTUAL BACKGROUND

**A.  The Claim**

9. Drury is the former Chief Executive Officer for Diamondback. Both Drury and Diamondback are Insureds under Travelers' Policy No. 105887106 (the "Policy"), which has a Policy Period of December 21, 2019 to March 1, 2021 and provides $5 million of coverage, inclusive of Defense Expenses.[1]

10. Beginning in April 2020, Repeat Precision, LLC ("Repeat") alleged in filings in a federal district court that "Diamondback or its CEO Derrek Drury" fraudulently "transferred" assets to evade satisfaction of an underlying judgment against Diamondback.[2] After Diamondback filed for bankruptcy—which automatically stayed the district court action—

---

[1] Diamondback canceled the Policy on December 11, 2020 but purchased an extended reporting period.

[2] Diamondback and Drury are not seeking coverage for the previous underlying lawsuit or satisfaction of the judgment Repeat obtained against Diamondback.

**PLAINTIFFS' ORIGINAL PETITION**　　　　　　　　　　　　　　　　　　　　　　　　　　**PAGE | 3**

Repeat continued its claims of fraudulent transfer in the federal bankruptcy court, ultimately alleging that Diamondback and Drury fraudulently transferred over $40 million.

11. Continuing its pursuit, on May 4, 2020, Repeat's counsel, Munsch Hardt, sent a demand letter to Diamondback based on these alleged fraudulent transfers. Repeat alleged in the Munsch Hardt demand that:

- Drury obtained $15 million[3] through a "textbook fraudulent transfer on which the Debtor *or any creditor* [*i.e.*, Repeat] would prevail on";

- Drury must be "stopped lest he commit further wrongs and injuries"; and,

- Repeat has a "direct claim" for an "actual[] fraudulent transfer[.]"

12. Repeat further demanded that Diamondback sue Drury "to avoid and recover various actually and constructively fraudulent transfers under the Bankruptcy Code and under the Texas Uniform Fraudulent Transfer Act." Repeat, through the Munsch Hardt demand, asserted that Drury committed wrongful acts and demanded relief therefrom. Repeat sent the Munsch Hardt demand for only one reason—so that it could sue Drury, itself. The demand itself stated that it was being sent in accordance with *La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233 (5th Cir. 1988) (where debtor-in-possession, after demand, fails to pursue action to "maximize the value of the estate," a creditor may sue, itself). On the same day, Repeat filed a motion to take the deposition of Drury and his wife to "investigat[e its] fraudulent transfer claims"—claims Repeat represented could be the creditors' only "source of recovery." That deposition occurred, albeit with no defense or assistance from Travelers.

13. In virtually every filing thereafter, Repeat alleged that Diamondback and/or Drury committed fraudulent transfers that harmed Repeat and depleted the bankruptcy estate. Repeat's fraudulent transfer claims pervaded the bankruptcy proceedings and required Diamondback and

---

[3] The $15 million transfer—which Diamondback and Drury firmly deny was fraudulent—occurred in late December 2019, within the Policy Period.

Drury—each having been forced to retain independent counsel—to incur significant attorneys' fees and costs to defend against the fraudulent transfer allegations.

14.  On December 11, 2020, without Travelers' assistance—and following Travelers' refusal to participate in or consent to the ongoing settlement negotiations—Drury settled the fraudulent transfer claims alleged against him. While the fraudulent transfer claims were defensible and Drury specifically disputed any liability, Drury ultimately paid a significant amount to settle those claims and obtain a release.

**B.     Travelers' Coverage Obligations**

15.  The Policy provides $5 million of coverage for "Private Company Directors and Officers Liability." Under the Policy's Insuring Agreement, Travelers agreed to "pay on behalf of" the "Insured Organization" and "Insured Persons"[4] all "**Loss**[es] for **Wrongful Acts**," "resulting from any **Claim** first made during the Policy Period, or if exercised, during the Extended Reporting Period[.]" The following defined terms govern Travelers' coverage obligations:

> **Claim** means:
>
> 1.   a written demand, other than a Security Holder Derivative Demand,[5] for monetary damages or non-monetary relief;
>
> 2.   a civil proceeding commenced by service of a complaint or similar pleading; [or] . . . ,
>
> 5.   an arbitration, mediation or similar alternative dispute resolution proceeding if . . . the Insured agrees to participate in such proceeding, with the Company's written consent, such consent not to be unreasonably withheld,
>
> against an Insured for a **Wrongful Act**[.]

---

[4] Travelers has rightly conceded that, "[a]s the former CEO of Diamondback, Mr. Drury meets the definition of an Insured Person."

[5] Repeat's demands obviously were not "Security Holder Derivative Demand[s]" as that term is defined under the Policy because Repeat was not a "security holder[] of [Diamondback]."

**Wrongful Act** means:

1. any actual or alleged act, error, omission, . . . or any matter asserted against, an Insured Person in his or her capacity as such; [and, . . .]

3. any actual or alleged act, error, omission . . . , or any matter asserted against, the Insured Organization.

**Loss** means **Defense Expenses** and money which an Insured is legally obligated to pay as a result of a Claim, **including settlements**.

16. Travelers owed Diamondback and Drury a duty defend against Repeat's fraudulent transfer claims as a matter of law.

**C.   Travelers' Unreasonable Breach of its Duty to Defend**

17. In accordance with the Policy's notice provisions, Diamondback and Drury timely notified Travelers of Repeat's fraudulent transfer claims and requested a defense.[6] Despite its clear duty to provide a defense, Travelers wrongfully denied coverage.[7] In so doing, Travelers breached its contractual duty to defend.

18. It is well-established that, in determining a duty to defend, a court must "construe the pleadings liberally" and "resolve all doubts regarding the duty to defend in favor of the duty." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008). Even if a third-party's complaint or demand does "not state facts sufficient to clearly bring the case within . . .

---

[6] In connection therewith—and as Travelers has noted—Diamondback sent Travelers the Munsch Hardt Demand and various other motions and pleadings in which Repeat demanded relief for the alleged fraudulent transfers.

[7] Apparently reluctant to issue a final coverage position, Travelers represented that "a definitive coverage evaluation may not be possible until all issues in this matter have been resolved." Travelers' obvious effort to avoid a later finding of breach or waiver fails. Travelers refused to accept its coverage obligations and plainly denied coverage by: (1) never defending Diamondback or Drury; (2) refusing to participate in settlement negotiations; and (3) sending Diamondback a ten-page narrative outlining the various (baseless) reasons it contended coverage did not exist. Moreover, Travelers' non-committal response waived any defense to coverage based on a lack of consent. *See Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 190-91 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

coverage, the general rule is that the insurer is [still] obligated to defend if there is, potentially, a case under the complaint [or demand] within the coverage of the policy." *Id.* (citation omitted).

19. Even without the required "liberal" construction—but especially with it—Repeat's repeated demands on Diamondback and Drury gave rise to a "Claim" that triggered Travelers' duty to defend, as they were "written demand[s]" for "monetary damages or non-monetary relief" for an Insured's alleged Wrongful Act. *See Zurich*, 268 S.W.3d at 491. As set forth below, Travelers' contrary position was false and patently unreasonable.

## VI.
## CAUSES OF ACTION

*Count One:  Breach of Contract.*

20. Plaintiffs incorporate by reference and re-allege in full the preceding paragraphs of this Petition.

21. There is a valid and enforceable contract between Plaintiffs and Defendant. Plaintiffs performed their obligations under the contract by paying the premium amounts that became due thereunder. Defendant, on the other hand, breached the contract by refusing to provide a defense for Plaintiffs against the claims that Repeat asserted against them.

22. As a proximate and foreseeable result of Defendant's breach of the parties' contract, Plaintiffs have been damaged for which sums Plaintiffs hereby sue, in an amount that exceeds the jurisdictional limits of this Court. Plaintiffs seek their actual damages plus pre- and post-judgment interest at the highest rate allowed by applicable law.

23. All conditions precedent have been satisfied, occurred, or have otherwise been waived.

*Count Two: Attorneys' Fees.*

24. Plaintiffs incorporate by reference and re-allege in full the preceding paragraphs of this Petition.

25. As a consequence of Defendant's breach of the parties' written contract, Plaintiffs were required to retain Kelly Hart & Hallman LLP to prosecute the claims asserted herein. Plaintiffs are entitled to recover, and hereby seek to recover, their attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code § 38.001 *et seq.*

## VII.
## CONDITIONS PRECEDENT

26. All conditions precedent have been satisfied, occurred, or have otherwise been waived.

## VIII.
## JURY DEMAND

27. Plaintiffs request a jury trial for all issues so triable.

## IX.
## PRAYER FOR RELIEF

Plaintiffs respectfully request that Defendant be cited to appear and answer herein, and that upon a final trial on the merits, the Court award Plaintiffs:

a) Actual damages;

b) Reasonable and necessary attorneys' fees;

c) Costs of Court;

d) Pre- and post-judgment interest at the highest rate allowed by applicable law; and

e) Such other and further relief, whether at law or in equity, to which it may be justly entitled.

Respectfully submitted,

*/s/ Hugh G. Connor II*
Hugh G. Connor II
State Bar No. 00787272
hugh.connor@kellyhart.com
Preston R. Mundt
State Bar No. 24058465
preston.mundt@kellyhart.com
Caitlyn E. Hubbard
State Bar No. 24097853
caitlyn.hubbard@kellyhart.com
**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: (817) 332-2500
Facsimile: (817) 878-9280

**ATTORNEYS FOR PLAINTIFFS**