IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DD ENERGETICS INC. f/k/a § | | |
| DIAMONDBACK INDUSTRIES, INC. § | | |
| and DERREK DRURY, § | | |
| § | | |
| *Plaintiffs*, § | | |
| § | CIVIL ACTION NO. | |
| v. § | | |
| § | 4:21-CV-00905-P | |
| TRAVELERS CASUALTY AND § | | |
| SURETY COMPANY OF AMERICA, § | | |
| § | | |
| *Defendant*. § | | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE MARK T. PITTMAN:

NOW COME Plaintiffs DD Energetics Inc. f/k/a Diamondback Industries, Inc. ("Diamondback") and Derrek Drury ("Drury") (together, the "Plaintiffs") and file their First Amended Complaint against Defendant Travelers Casualty and Surety Company of America ("Travelers" or "Defendant"). In support of same, Plaintiffs respectfully show the Court as follows:

### I. PARTIES

1. Plaintiff DD Energetics Inc. f/k/a Diamondback Industries, Inc. is a corporation formed in the State of Texas and maintains its principal place of business in Tarrant County, Texas.

2. Plaintiff Derrek Drury is an individual citizen of the State of Texas and resides in Tarrant County, Texas.

3. Defendant Travelers Casualty and Surety Company of America is an insurance company formed under the laws of the State of Connecticut, with its principal place of business in

Connecticut. Travelers is registered with the Texas Department of Insurance. Travelers has answered and appeared in this lawsuit.

## II. JURISDICTION AND VENUE

4. The Court has jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)(1) because Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

5. Venue is proper under 28 U.S.C. § 1391(b)(1) because Travelers resides in this judicial district. Specifically, under 28 U.S.C. § 1391(c), Defendant resides in this Judicial District as it is a corporation that does business in this judicial district and, therefore, is subject to personal jurisdiction therein. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## III. FACTUAL ALLEGATIONS

**A.  The Claim.**

6. Drury is the former Chief Executive Officer for Diamondback. Both Drury and Diamondback are Insureds under Travelers' Policy No. 105887106 (the "Policy"), which has a Policy Period of December 21, 2019 to March 1, 2021 and provides $5 million of coverage, inclusive of Defense Expenses.[1]

7. Beginning in April 2020, Repeat Precision, LLC ("Repeat") alleged in filings in a federal district court that "Diamondback or its CEO Derrek Drury" fraudulently "transferred" assets to evade satisfaction of an underlying judgment against Diamondback.[2] After Diamondback filed for bankruptcy—which automatically stayed the district court action—

---

[1] Diamondback canceled the Policy on December 11, 2020 but purchased an extended reporting period.

[2] Diamondback and Drury are not seeking coverage for the previous underlying lawsuit or satisfaction of the judgment Repeat obtained against Diamondback.

Repeat continued its claims of fraudulent transfer in the federal bankruptcy court, ultimately alleging that Diamondback and Drury fraudulently transferred over $40 million.

8. Continuing its pursuit, on May 4, 2020, Repeat's counsel, Munsch Hardt, sent a demand letter to Diamondback based on these alleged fraudulent transfers. Repeat alleged in the Munsch Hardt demand that:

- Drury obtained $15 million[3] through a "textbook fraudulent transfer on which the Debtor *or any creditor* [*i.e.*, Repeat] would prevail on";

- Drury must be "stopped lest he commit further wrongs and injuries"; and,

- Repeat has a "direct claim" for an "actual[] fraudulent transfer[.]"

9. Repeat further demanded that Diamondback sue Drury "to avoid and recover various actually and constructively fraudulent transfers under the Bankruptcy Code and under the Texas Uniform Fraudulent Transfer Act." Repeat, through the Munsch Hardt demand, asserted that Drury committed wrongful acts and demanded relief therefrom. Repeat sent the Munsch Hardt demand for only one reason—so that it could sue Drury, himself. The demand itself stated that it was being sent in accordance with *La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233 (5th Cir. 1988) (where debtor-in-possession, after demand, fails to pursue action to "maximize the value of the estate," a creditor may sue, itself). On the same day, Repeat filed a motion to take the deposition of Drury and his wife to "investigat[e its] fraudulent transfer claims"—claims Repeat represented could be the creditors' only "source of recovery." As addressed below, Travelers refused to provide a defense to Repeat's allegations. Therefore, that deposition occurred, albeit with no defense or assistance from Travelers.

---

[3] The $15 million transfer—which Diamondback and Drury firmly deny was fraudulent—occurred in late December 2019, within the Policy Period.

10.     In virtually every filing thereafter, Repeat alleged that Diamondback and/or Drury committed fraudulent transfers that harmed Repeat and depleted the bankruptcy estate. Repeat's fraudulent transfer claims pervaded the bankruptcy proceedings and required Diamondback and Drury—each having been forced to retain independent counsel due to Traveler's refusal to provide a defense—to incur significant attorneys' fees and costs to defend against the fraudulent transfer allegations.

11.     On December 11, 2020, without Travelers' assistance—and after Travelers' refusal to participate in or consent to the ongoing settlement negotiations—Drury and Diamondback settled the fraudulent transfer claims alleged against them. The fraudulent transfer claims were defensible and Diamondback and Drury specifically disputed any liability. Nevertheless, Diamondback and Drury ultimately paid a significant amount to settle those claims and obtain a release. The settlement was necessitated by Travelers' refusal to provide coverage, including a defense, which left Diamondback and Drury exposed to significant expense to defend these allegations.

### B.     Travelers' Coverage Obligations.

12.     The Policy provides $5 million of coverage for "Private Company Directors and Officers Liability."[4]  Under the Policy's Insuring Agreement, Travelers agreed to "pay on behalf of" the "Insured Organization" and "Insured Persons"[5] all "**Loss**[es] for **Wrongful Acts**," "resulting from any **Claim** first made during the Policy Period, or if exercised, during the

---

[4] In correspondence to Diamondback responding to Diamondback's coverage demand, Travelers misrepresented the limit of liability as $1 million by referencing an expired policy. Although Travelers noted in a footnote that the expired policy was "renewed," Travelers failed to reference the $5 million limit of liability applicable to the renewed policy. Travelers' misrepresentation of the applicable coverage limits in its letter denying coverage is itself a violation of Section 541.060 of the Texas Insurance Code, which prohibits an insurer from "misrepresenting … a material fact or policy provision relating to coverage at issue[.]"

[5] Travelers has rightly conceded that, "[a]s the former CEO of Diamondback, Mr. Drury meets the definition of an Insured Person."

Extended Reporting Period[.]" The following defined terms govern Travelers' coverage obligations:

> **Claim** means:
>
> 1. a written demand, other than a Security Holder Derivative Demand,[6] for monetary damages or non-monetary relief;
>
> 2. a civil proceeding commenced by service of a complaint or similar pleading; [or] . . . ,
>
> 5. an arbitration, mediation or similar alternative dispute resolution proceeding if . . . the Insured agrees to participate in such proceeding, with the Company's written consent, such consent not to be unreasonably withheld,
>
> against an Insured for a **Wrongful Act**[.]
>
> **Wrongful Act** means:
>
> 1. any actual or alleged act, error, omission, . . . or any matter asserted against, an Insured Person in his or her capacity as such; [and, . . .]
>
> 3. any actual or alleged act, error, omission . . . , or any matter asserted against, the Insured Organization.
>
> **Loss** means **Defense Expenses** and money which an Insured is legally obligated to pay as a result of a Claim, **including settlements**.

13. Travelers owed Diamondback and Drury a duty to defend against Repeat's fraudulent transfer claims as a matter of law.

**C.    Travelers' Unreasonable Breach of its Duty to Defend.**

14. In accordance with the Policy's notice provisions, Diamondback and Drury timely notified Travelers of Repeat's fraudulent transfer claims and requested a defense.[7] Despite its

---

[6] Repeat's demands obviously were not "Security Holder Derivative Demand[s]" as that term is defined under the Policy because Repeat was not a "security holder[] of [Diamondback]."

[7] In connection therewith, Diamondback sent Travelers the Munsch Hardt Demand and various other motions and pleadings in which Repeat demanded relief for the alleged fraudulent transfers. Travelers did not reasonably review or investigate these demands, which plainly triggered Travelers' duty to defend. Nor does it appear that Travelers

clear duty to provide a defense, Travelers wrongfully denied coverage.[8]  In so doing, Travelers breached its contractual duty to defend, violated its statutory obligations under Sections 541.060, 542.056, and 542.058 of the Texas Insurance Code, and violated the DTPA.  Not only did Travelers fail to reasonably investigate coverage, *see* TEX. INS. CODE § 541.060(a)(7), but it wrongfully denied coverage that plainly existed.

15. It is well-established that, in determining a duty to defend, a court must "construe the pleadings liberally" and "resolve all doubts regarding the duty to defend in favor of the duty." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008).  Even if a third-party's complaint or demand does "not state facts sufficient to clearly bring the case within . . . coverage, the general rule is that the insurer is [still] obligated to defend if there is, potentially, a case under the complaint [or demand] within the coverage of the policy." *Id.* (citation omitted).

16. Even without the required "liberal" construction—but especially with it—Repeat's repeated demands on Diamondback and Drury gave rise to a "Claim" that triggered Travelers' duty to defend, as they were "written demand[s]" for "monetary damages or non-monetary relief" for an Insured's alleged Wrongful Act. *See Zurich*, 268 S.W.3d at 491.  As set forth below, Travelers' contrary position was false and patently unreasonable.

---

conducted any other investigation of the asserted claims.  *See* TEX. INS. CODE § 541.060(a)(7) (an insurer cannot refuse to "pay a claim without conducting a reasonable investigation with respect to the claim.").

[8] Apparently reluctant to issue a final coverage position, Travelers represented that "a definitive coverage evaluation may not be possible until all issues in this matter have been resolved."  Travelers' obvious effort to avoid a later finding of breach or waiver fails.  Travelers refused to accept its coverage obligations and plainly denied coverage by: (1) never defending Diamondback or Drury; (2) refusing to participate in settlement negotiations; and (3) sending Diamondback a ten-page narrative outlining the various (baseless) reasons it contended coverage did not exist.  Moreover, Travelers' non-committal response violated the Texas Insurance Code and waived any defense to coverage based on a lack of consent.  *See* TEX. INS. CODE §§ 541.060(a)(4), 542.056, and 542.058; *see also Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 190-91 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

**D.     Travelers' Unreasonable Breach of its Duty to Indemnify.**

17.     Independent of its duty to defend, Travelers also owes a contractual duty to indemnify Drury for his settlement payment. Importantly, an insurer's duty to defend and its duty to indemnify "are independent, and the existence of one does not necessarily depend on the existence or proof of the other." *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 744 (Tex. 2009). Even assuming Repeat's earlier demands did not constitute a "Claim" (they plainly did), the subsequent settlement resolved claims within it that clearly constituted a "Claim" under the Policy, for which Travelers must now indemnify.

18.     Given Travelers' refusal to assume the defense, and its refusal to participate in settlement of such claims, Drury was forced to resolve the matter by himself. The settlement agreement both recognized and effected a covered "Claim." And, because Travelers chose not to participate in the settlement negotiations, Travelers cannot contest its duty to indemnify Drury for the settlement losses. *See Evanson, Inc.*, 256 S.W.3d at 671-72.

### IV.  CAUSES OF ACTION

**A.     Count One:  Breach of Contract.**

19.     Plaintiffs incorporate by reference and re-allege in full the preceding paragraphs of this Complaint.

20.     There is a valid and enforceable contract between Plaintiffs and Defendant. Plaintiffs performed their obligations under the contract by paying the premium amounts that became due thereunder. Defendant, on the other hand, breached the contract by refusing to provide defense or indemnity benefits for Plaintiffs with respect to the claims that Repeat asserted against them.

21. As a proximate and foreseeable result of Defendant's breach of the parties' contract, Plaintiffs have been damaged for which sums Plaintiffs hereby sue, in an amount within the jurisdictional limits of the Court.  Plaintiffs seek their actual damages plus pre- and post-judgment interest at the highest rate allowed by applicable law.

22. All conditions precedent have been satisfied, occurred, or have otherwise been waived.

**B.     Count Two:  Insurance Code Violations.**

23. Plaintiffs incorporate by reference and re-allege in full the preceding paragraphs in this Complaint.

24. Plaintiffs bring this claim pursuant to Chapters 541 and 542 of the Texas Insurance Code.

25. Plaintiffs would show that although they made a lawful claim for benefits, to which they are clearly entitled, Defendant has knowingly failed and refused to pay the benefits.

26. Defendant has engaged in unfair and/or deceptive acts and/or omissions with respect to the claim by Plaintiffs.

27. Such acts and/or omissions specifically include, but are not limited to, the following unfair and/or deceptive practices:

   a. Misrepresenting to a claimant a material fact or policy provision relating to the coverage at issue.

   b. Failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of claims with respect to which Defendant's liability has become reasonably clear.

   c. Failing to provide promptly to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for Defendant's denial of a claim.

   d. Failing within a reasonable time to affirm or deny coverage of a claim to a policyholder.

   e.  Refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

28. The conduct of Defendant described above is a producing and proximate cause of actual damages to Plaintiffs.

29. Additionally, Plaintiffs contend that the acts complained of were committed knowingly. Therefore, Plaintiffs also seek the additional statutory damages specified in Section 541.152 of the Texas Insurance Code in such amount, up to three times the amount of actual damages, as the trier of fact may award.

30. Further, Defendant violated Section 542.056 of the Texas Insurance Code by failing to provide timely notice to a claimant in writing of the acceptance or rejection of a claim.[9] Defendant also violated Section 542.058 of the Texas Insurance Code by failing to pay the claim within the time period set forth in the statute. Accordingly, in addition to the other amounts sought herein, Plaintiffs seek to recover interest on the amount of Plaintiffs' claim at the rate of 18 percent per year as damages. *See* TEX. INS. CODE § 542.060.

**C. Count Three: Attorneys' Fees.**

31. Plaintiffs incorporate by reference and re-allege in full the preceding paragraphs of this Complaint.

32. Prosecution of Plaintiffs' causes of action has necessitated the services of an attorney and the payment of or promise to pay a reasonable sum as attorney's fees for the preparation, trial, and any appeal of this case, a sum that Defendant should be ordered to pay to compensate Plaintiffs.

---

[9] After being notified of the Claim, Travelers unnecessarily and unreasonably delayed accepting or rejecting the claim for several months. Ultimately, Travelers denied coverage under the Policy.

33. Therefore, Plaintiffs seek all reasonable and necessary attorney's fees in this case, including but not limited to, preparation and trial of this lawsuit, post-trial motions, appeals, and post-judgment discovery and collection in the event execution of the judgment is necessary.

## V.  CONDITIONS PRECEDENT

34. All conditions precedent have been performed or have occurred as required by Federal Rule of Civil Procedure 9.

## VI.  JURY TRIAL

35. Plaintiffs respectfully request a trial by jury.

## VII.  PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that Defendant be cited to appear and answer, and that on final trial, have and recover as follows:

a. Judgment against Defendant for actual damages in an amount in excess of the minimum jurisdictional limits of this Court;

b. An amount not less than three times actual damages pursuant to Chapter 541 of the Texas Insurance Code;

c. Interest on the amount of Plaintiffs' claim at the rate of 18 percent per year as damages pursuant to TEX. INS. CODE § 542.060;

d. Pre-judgment interest at the maximum allowable legal rate on such judgment until paid;

e. Post-judgment interest;

f. Attorney's fees;

g. Costs of suit; and

h. Such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

*[signature]*

GREGORY P. BLAIES
State Bar No. 02412650
Email: gregblaies@bhilaw.com

GRANT D. BLAIES
State Bar No. 00783669
Email: grantblaies@bhilaw.com

GREG S. GOBER
State Bar No. 00785916
Email: ggober@bhilaw.com

BRIAN K. GARRETT
State Bar No. 24074254
Email: bgarrett@bhilaw.com

**BLAIES & HIGHTOWER, L.L.P.**
420 Throckmorton Street, Suite 1200
Fort Worth, TX 76102
(817) 334-0800
(817) 334-0574 (Fax)

**ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record via electronic notice through the Court's CM/ECF system on this the 1st day of September, 2021:

| | |
|---|---|
| J. Price Collins | \_\_\_\_\_ FACSIMILE |
| Thomas M. Spitaletto | \_\_\_\_\_ CERTIFIED MAIL, RRR |
| WILSON ELSER MOSKOWITIZ EDELMAN | \_\_\_\_\_ REGULAR U.S. MAIL |
|    & DICKER, LLP | \_\_\_\_\_ HAND DELIVERY |
| 901 Main Street, Suite 4800 | __X__ ELECTRONICALLY |
| Dallas, Texas 75202 | |

                                              Brian K. Garrett